## AFFIDAVIT

I, Julia E. Meredith, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately February 2001. I am currently assigned to the Sidney Resident Agency, Sidney, Montana.

2. As part of my duties as an FBI Special Agent, I investigate violations of 21 U.S.C. §§ 841(a)(1) and associated Possession with Intent to Distribute a Controlled Substance violations. I also have participated in the execution of multiple federal search warrants. I have received advanced training on the use of canines for detection of various odors.

3. I make this affidavit in support of an application for a warrant to search a cardboard box addressed to Tim Swope, 615 3rd St NE, Sidney MT 59270-4713 for a controlled substance. This box is currently in the possession of the United States Postal Service's (USPS) Sidney Post Office, Sidney, Montana. The USPS had attempted delivery of the box to Swope on February 12, 2015 but was unable to do so due to the presence of a dog outside the delivery address.

4. The statements in this affidavit are based on an ongoing criminal investigation, on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this

investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that methamphetamine and/or U.S. Currency in violation of Title 21, United States Code, Section 841 (a)(1) is contained within the **Subject Premises**.

## BACKGROUND INFORMATION

5. Since October 2015, the Federal Bureau of Investigation (FBI), the State of Montana Department of Justice Division of Criminal Investigation (DCI), Richland County Sheriff's Office (RCSO) and the Sidney Police Department (SPD) have been investigating Tim Swope and activities occurring in and around 615 3rd Street Northeast, Sidney, Montana.

6. This address first came to the attention of the FBI when a confidential human source (CHS) operated by the FBI reported observing several package deliveries per week to Tim Swope at 615 3rd St NE. The CHS had no information related to the packages' contents, only that the deliveries seemed extraordinarily frequent.

7. Soon after this report, SPD received a complaint of an abandoned bus, located in the yard behind 615 3rd St NE, from which a strong odor of ammonia was often emanating. The complainant added that there was a significant amount of short term traffic coming and going from the bus. Based upon the reported suspicious activity, SPD suspected that an illegal clandestine methamphetamine lab may have been operating in the bus.

8. During surveillance by the FBI and SPD, a white Chevrolet pickup was observed in the driveway of 615 3rd St NW. A registration check revealed that the vehicle

was registered to a Timothy Swope. Swope had been stopped previously by the Montana Highway Patrol while driving this vehicle.

9. Swope's criminal history includes 20 arrests for myriad charges, including possession of methamphetamine, possession with intent to distribute, possession of a concealed weapon, and possession of ephedrine, a primary methamphetamine manufacturing precursor. Swope recently ended probation stemming from a 2014 narcotics possession conviction.

10. An examination by SPD and DCI of garbage obtained lawfully from a refuse container behind 615 3rd St NE revealed two cardboard boxes with labels addressed to Tim Swope at 615 3rd St NE. No other items were located in the dumpster that contained addresses for any neighboring homes, suggesting that all the trash in the dumpster had come from 615 3rd St NE. In addition to the two cardboard boxes, a single large, black, heavy-duty garbage bag full of trash was located. Among the garbage within this bag an empty vacuum-seal bag was located that had been cut open at one end. Inside the bag there were a number of small white or semi-white crystals that appeared to be consistent with and tested presumptively positive for methamphetamine. Also located amongst the loose trash in the dumpster was another larger vacuum-sealed bag that had been cut open that contained a small amount of green plant material, and the inside of the bag smelled strongly of marijuana.

11. I know from prior experience that individuals involved in trafficking illegal controlled substances often use vacuum-sealed bags to package the illegal drugs in an effort to conceal any odors that might be detected by law enforcement officers or drug

detecting police canines.

## FACTS SUPPORTING PROBABLE CAUSE TO SEARCH
## THE SUBJECT PREMISES

### A.  State search warrant served on 615 3rd Street NE, Sidney, Montana

12.  On February 17, 2016, officers and agents of the FBI, DCI, RCSO, and SPD executed a state search warrant at 615 3rd St NE. The warrant, SW-16-13 in the District Court of the 7th Judicial District of the State of Montana In and For the County of Richland, was signed by District Judge Katherine M. Bidegary. Your affiant participated in this search.

13.  The search warrant was based upon probable cause derived from the aforementioned facts as well as additional information provided by a resident of 615 3rd St NW, Lecie Martin. Martin is the mother of Swope's son, born on December 30, 2015. Martin had filed a report with SPD on February 15, 2016 alleging Swope had taken their child from her on February 12 and had assaulted her when she attempted to retrieve the child. Martin admitted that she, Swope, another resident of 615 3rd St NE, and their associates all smoked methamphetamine in the house in the presence of the infant. A subsequent interview of Swope by SPD led to Swope admitting he uses methamphetamine regularly and in the presence of the infant. These circumstances led to the immediate preparation of and issuance of a state search warrant to remove the child from an unsafe location to the protective custody of the State of Montana Child Protective Services.

14. The search of 615 3rd St NE led to the collection of a large amount of evidence which I believe indicates Swope is engaged in the use and distribution of methamphetamine. Among the items found were two plastic bags, one containing 28.6 grams and the other containing 10.2 grams of a white crystalline substance which tested presumptively positive for methamphetamine; cash deposit slips showing two deposits of approximately $11,000 cash to accounts at Wells Fargo in Sidney; bank statements from Stockman Bank showing numerous cash deposits of $1,000 or more; several notebooks and loose sheets of paper containing apparent drug ledger notations; several packages, both opened and unopened, of small clear plastic "zip-loc" bags; a digital scale; used and full hypodermic syringes containing an unknown clear liquid; a glass pipe that tested presumptively positive for methamphetamine residue; and a radio frequency detector.

15. I know from my experience and that of other law enforcement officers the presence of numerous small plastic bags and a scale are indicative of intent to repackage and distribute controlled substances. I also know that the usual dose of methamphetamine used by an individual is 0.5 gram per day or less. Present at Swope's residence was approximately 80 doses of methamphetamine, a quantity indicative of distribution rather than personal use.

**B. Parcel 9405 5096 9993 7316 8087 64**

16. Among the items collected during the search was a notification from the USPS that showed an attempted delivery on February 12, 2016 of a parcel with the tracking number 9405 5096 9993 7316 8187 64, addressed to customer Tim Swope, 615 3rd St NE. The reason for non-delivery of the parcel was noted as "dog".

17. SPD determined the parcel in question was present at the Sidney Post Office.

18. The return address on the parcel was "CARRS4x4, 19881 Brookhurst St., #142, Ste C, Huntington Beach, CA 92646-4269". An open-source check of this address show it to be a mail and parcel service store. An Internet search shows "CARRS4x4" to be a used Land Rovers parts store utilizing this parcel service store as its business location. I know from prior investigations that individuals involved in drug trafficking often utilize false business names associated with street addresses that are in fact parcel service stores to give the appearance of a legitimate business.

19. Following consultation with a USPS Postal Inspector, a drug detecting canine was used to test the parcel for the presence of a controlled substance.

20. A SPD K9 officer and his drug detecting canine performed the testing. The canine is a three year old Belgian Malinois-German Shepherd mix and is trained to indicate in the presence of the odor of narcotics by actively seeking the source of the odor and scratching where he finds the source of the odor. The canine is trained to indicate on marijuana, methamphetamine, heroin and cocaine, plus the derivatives of the narcotics. The canine is certified by the United States Police Canine Association and the North American Police Work Dog Association. His handler is a State of Montana certified officer and is a graduate of the Montana Law Enforcement Academy and has received advanced training in handling the canine and reading the canine's alert and indication behaviors. The canine and his handler have been working together for approximately two

years, and train regularly to maintain proficiency. I know from other law enforcement officers that the canine has successfully detected methamphetamine in vehicles.

21. The canine was given approximately ten parcels to check which were arrayed to minimize mingling of odors. The canine's handler was unaware of which parcel was of interest.

22. After checking all parcels, the canine showed alert behaviors only in the presence of the questioned parcel. The canine's handler noted that the canine's behaviors at the parcel were attributable only to the canine being 'in odor'; that is, in the presence of a narcotic at the questioned parcel only. The canine did not give a final indicator due to the canine's inability to pin-point the source of the odor sufficiently.

23. Investigation to date has shown Swope has received parcels before which contained vacuum-sealed bags of methamphetamine, which are commonly used by individuals involved in drug trafficking to conceal any odors that might be detected by drug detection canines. I believe that the behavior of the canine at the questioned parcel was due to the use of packaging techniques designed to thwart detection.

### C. Prior use of the mails to send controlled substances and U.S. Currency

24. Raymond Turner was arrested by the Idaho State Police (ISP) on December 28, 2015 following a traffic stop. A consent search of his vehicle revealed that Turner was transporting approximately 3.57 pounds of a white crystalline substance that tested presumptively positive for methamphetamine from California to Sidney, Montana, where it was destined for delivery to Swope. During subsequent interviews with the FBI, Turner related how on December 25, 2015, Swope had provided him with $11,250 cash

to purchase the methamphetamine from the supplier in California. Turner was given the cash by Swope while Turner was visiting Swope at 615 3rd St NE. Turner said additional funds were sent to the supplier via wire transfers just prior to Tuner's arrival there on or about December 27, 2015. Receipts from those wire transfers were seized by ISP from Turner's vehicle. In addition, Turner provided information how in the past Swope had both received methamphetamine and had sent U.S. currency utilizing the mail.

25. Turner further stated he learned from the supplier that money and/or methamphetamine were regularly shipped between the supplier and Swope for several months preceding Turner meeting the supplier. The supplier also told Turner about Swope and his methamphetamine distribution associates making routine large cash deposits into accounts controlled by or accessible to the supplier at national banks with branches in and around Sidney, Montana. These deposits were payments for large shipments of methamphetamine to Swope and his associates.

26. I know from prior experience that U.S. Currency that has been stored or handled in the presence of controlled substances can carry the odor of the controlled substance on the currency. This odor may be detectable by a canine trained to detect the odor of controlled substances.

## CONCLUSION

27. Based upon the information above, I believe that there is probable cause to believe that parcel 9405 5096 9993 7315 8087 64 contains either illegal controlled substances destined for Tim Swope, or U.S. Currency intended to purchase controlled substances or the proceeds of trafficking, in violation of 218 U.S.C. Section 841 (a)(1).

The foregoing is true to the best of my knowledge and belief.

Julia E. Meredith
Special Agent
Federal Bureau of Investigation


Sworn and subscribed before me this 25 day of February, 2016.

John Johnston
United States Magistrate Judge